UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SHONDESE FRAZIER                                                                                   PLAINTIFF

v.                                                                        CIVIL ACTION NO. 4:14-CV-00125-CRS

SOUTHWIRE COMPANY, LLC                                                                    DEFENDANT

## MEMORANDUM OPINION

Defendant Southwire Company, LLC ("Southwire") moves the Court for summary judgment on all of Plaintiff Shondese Frazier's claims. Frazier has alleged claims against Southwire under the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Kentucky Workers Compensation Act. The Court will grant Southwire's motion and dismiss Frazier's claims.

## BACKGROUND

On September 23, 2011, Frazier suffered a work-related injury at the Southwire factory while working as a drawing machine operator. The factory manufactures wires and utility cables. A drawing machine operator feeds wire rods into a machine, which then draws the wire rod to a selected size before feeding it onto a device that holds the wire. Frazier Dep. 17 – 18, ECF No. 24-1. Frazier's doctor diagnosed him with chronic posttraumatic headaches and chronic migraines. Jan. 30, 2013 Ferluga Medical Report Letter, ECF No. 24-3. After returning to work, Southwire continued to employ Frazier, but in a "light duty" capacity. Frazier Dep. 28. In this position, Frazier performed a variety of jobs around the factory. *Id.* These tasks ranged from

1

picking up items from a local store to performing clerical work. *Id.* Southwire paid him at the same rate as his previous position. *Id.* at 29.

During all relevant times after the accident, Frazier's doctor mandated work restrictions. These restrictions included not working in areas with fumes, loud noises, bright lights, or around moving machinery. *See, e.g.*, Feb. 24, 2015 Outpatient Neurology Consultation Report, ECF No. 22-27; May 5, 2014 Outpatient Neurology Consultation Report, ECF No. 22-25. Further, his doctor said he should not climb, squat, or kneel. *See, e.g.*, Feb. 24, 2015 Outpatient Neurology Consultation Report; May 5, 2014 Outpatient Neurology Consultation Report. His doctor concluded after more than a year of observation that these were permanent restrictions. *See* Oct, 16, 2014 Outpatient Neurology Consultation Report, ECF No. 22-27.

In May 2012, Frazier took leave under the FMLA. In October 2012, Frazier filed a workers' compensation benefits claim, which Southwire opposed. In October 2013, Frazier successfully received workers' compensation benefits. The following February, Southwire terminated Frazier's employment. Frazier remained on an unpaid leave of absence from May 2012 to February 2014. Frazier Dep. 30.

## STANDARD

Before granting a motion for summary judgment, the Court must find that "there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The non-moving party must show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R.

2

Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

1. The Americans with Disabilities Act

Under the ADA, an employer may not terminate or otherwise discriminate against an employee on the basis of disability. 42 U.S.C. § 12112(a). Frazier alleges Southwire failed to accommodate his disability and terminated his employment due to his disability.

In the absence of direct evidence of disability discrimination, Frazier must first establish a prima facie case of discrimination. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Gantt v. Wilson Sporting Goods Company*, 143 F.3d 1042, 1047 (6th Cir. 1998). To do so, Frazier must establish that (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of the disability. *See Barnum v. Ohio State Univ. Med. Ctr.*, No. 15-3450 (6th Cir. Feb. 19, 2016); *River Valley Sch. Dist.*, 197 F.3d at 810. To be a qualified individual under the ADA, the employee, "with or without reasonable accommodation," must be able to "perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions include "the fundamental job duties of the employment position the individual with a disability holds or desires. The term … does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). In determining whether something is an essential function of a job, "consideration shall be given to the

employer's judgment as to what functions of a job are essential" and any written descriptions of the job. 42 U.S.C. § 12111(8); *see also, Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 985 (6th Cir. 2011).

Frazier argues that he could have performed his job as drawing machine operator with two accommodations: assistance with lifting boards to put on the coil and wearing earmuffs over his earplugs. Pl.'s Resp. 6 – 7. Regardless of the feasibility of these accommodations, they would be insufficient to meet Frazier's own doctor's restrictions on his employment activities. The Sixth Circuit has repeatedly held that if a claimant's own doctor restricts the employee from an essential job function, the claimant is not a qualified individual under the ADA. *See, e.g., Johnson*, 443 F. App'x at 988 (holding that because the plaintiff's "doctors indicated that she was unable to safely and effectively 'verbally control' students, she was not 'qualified for the position, with or without reasonable accommodation'") (citation omitted). Here, Frazier's doctor consistently stated based on consultations spanning multiple years that Frazier could not work in areas with fumes, loud noises, bright lights, or around moving machinery. *See, e.g.*, Feb. 24, 2015 Outpatient Neurology Consultation Report; May 5, 2014 Outpatient Neurology Consultation Report. Further, his doctor said he should not climb, squat, or kneel while working. *See, e.g.*, Feb. 24, 2015 Outpatient Neurology Consultation Report; May 5, 2014 Outpatient Neurology Consultation Report.

In the drawing machine operator position, Frazier would need to work near the drawing machine. If Frazier did work in this position, it would violate his doctor's stated work restriction not to work around moving machinery.

Frazier also argues that his disability should have been accommodated through a transfer to another available position for which he was qualified. In particular, Frazier says the position of "Warehouse Clerk" was available during this period and he was qualified. Pl.'s Resp. 8. Southwire's job posting describes the position as:

> Responsible for moving product from production areas to warehouse. Moves empty reels to stranders and rigid frames. Enters cable into inventory and completes packaging. Maintains warehouse organization and housekeeping.

ECF No. 24-7. Again, Frazier's doctor prohibited moving through production areas where there are moving machines, including drawing machines and stranders. In his response briefing, Plaintiff ignores these medical restrictions and does not explain how Southwire could accommodate them in a production warehouse setting. The Court finds they cannot be accommodated in the ways Frazier argues. Frazier was not able to perform the essential functions of any available employment position at Southwire due to his doctor's explicit work restrictions. Thus, he was not qualified to perform the job requirements, with or without reasonable accommodation.

The Court will grant Southwire's motion for summary judgment on Frazier's ADA claim.

2. The Family Medical Leave Act

Under the FMLA, an employee is entitled to up to twelve weeks of unpaid leave when the individual cannot perform a job's functions due to a serious health condition. 29 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to interfere with, 29 U.S.C. § 2615(a)(1), or to "discharge or in any other manner discriminate against" an individual for exercising a right under the FMLA. 29 U.S.C. § 2615(a)(2).

Frazier's complaint alleges Southwire interfered with his exercise of FMLA rights and retaliated against him. Compl. ¶¶ 23 – 24, ECF No. 1. In Frazier's response to Southwire's motion for summary judgment, however, Frazier reframes this allegation as purely a "retaliation case." Pl.'s Resp. 11, ECF No. 24. Therefore, Frazier has waived his interference claim under the FMLA.

To establish a prima facie case for a FMLA retaliation claim, Frazier must demonstrate that (1) he engaged in conduct protected by the FMLA, (2) Southwire was aware of his exercise of protected rights, (3) Southwire took an employment action adverse to Frazier, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005). As Frazier bases his claim on indirect evidence, the *McDonnell Douglas* burden-shifting framework controls the Court's analysis. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313 (6th Cir. 2001); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The parties agree Frazier engaged in protected FMLA conduct when he took twelve weeks of unpaid leave for his serious health condition and that Southwire was aware of this leave. The parties also agree that Southwire's termination of Frazier's employment qualifies as an adverse employment action. The parties differ on whether that action was causally connected to the FMLA leave.

The Court finds no causal connection between the protected activity and the employment termination. While the Court may find temporal proximity establishes the causal connection prong of the prima facie case, the parties have not directed the Court to – and the Court has not uncovered – any case where the time frame between the protected and adverse action lasted over

6

eighteen months. *Compare Williams v. Union Underwear Co.*, 614 F. App'x 249, 257 (6th Cir. 2015) (holding that seven months between the alleged protected activity and termination of employment was insufficient to find a prima facie causal connection); *with Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding the prima facie requirement of causal connection satisfied when there was three months between requested FMLA leave and termination). At the end of Frazier's unpaid 12 week leave under the FMLA, Southwire provided Frazier with an additional 18 months unpaid leave.

Furthermore, Southwire's suggestion that Frazier exercise his FMLA leave rights does not suggest the company had the intent to terminate his employment in retaliation. Indeed, Southwire prompted the exercise of FMLA rights and provided additional, non-required leave. There is no evidence of any causal connection Frazier's taking the FMLA leave and Southwire terminating his employment over 18 months later. As there is no causal connection, Frazier's prima facie case fails.

The Court will grant Southwire's motion for summary judgment on Frazier's FMLA claims.

3. Kentucky Workers Compensation Claim, KRS § 342.197

Under KRS § 342.197, employers may not retaliate against their employees for applying for workers' compensation benefits. Frazier must first prove a prima facie case, establishing that:

> (1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006); *see also Witham v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 263 (6th Cir. 2016). As with Frazier's FMLA

7

claim, the parties agree that the first three prongs of the claim exist and disagree about the existence of a causal connection.

Again, the Court finds there is insufficient evidence to suggest any causal connection between protected activity and an adverse employment action. In establishing a causal connection, the plaintiff does not have to prove his employer terminated him solely for the protected action. *See First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993). Instead, the plaintiff must at least establish that the "lawfully impermissible reason was a substantial and motivating factor." *Id.*

Frazier argues that there is close temporal proximity between the award of workers' compensation benefits and Southwire's termination of his employment. Frazier is correct – there was approximately one month between Frazier receiving his benefits and his termination. However, this analysis ignores the actual protected activity – the filing and litigating of his workers' compensation claim. Frazier filed his claim in October 2012. Southwire was aware of this claim at that time. For over a year, Southwire did not take any adverse employment actions against Frazier. Instead, Southwire allowed Frazier to remain on unpaid leave when the company had no obligation to do so. There is no evidence Frazier's worker's compensation claim was a substantial and motivating factor in Southwire's termination of his employment. Instead, as discussed in Part 1, Frazier's work restrictions precluded him from available employment at the factory.

The Court will grant Southwire's motion for summary judgment on Frazier's KRS § 342.197 claim.

## CONCLUSION

The Court will grant Southwire's motion for summary judgment and dismiss Frazier's claims with prejudice.

The Court will enter a separate order in accordance with this opinion.

May 16, 2016

Charles R. Simpson III, Senior Judge
United States District Court

9